UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VICTOR RUIZ,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>RETRIEVAL-MASTERS CREDITORS<br>BUREAU, INC.,<br><br>　　　　　Defendant. | Civil Action No.<br>2:11-cv-03143-WHW-CCC |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
RETRIEVAL-MASTERS CREDITORS BUREAU, INC.'s
MOTION TO DISMISS THE COMPLAINT**

---

BUDD LARNER, P.C.
150 John F. Kennedy Parkway
Short Hills, New Jersey 07078-2703
973-379-4800 Phone
973-379-7734 Fax
vpallotto@buddlarner.com

Attorneys for Defendant,
  Retrieval-Masters Creditors
  Bureau, Inc.

On the Brief:
Virginia A. Pallotto, Esq.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................... ii

PRELIMINARY STATEMENT .......................................... 1

STATEMENT OF FACTS .............................................. 3

ARGUMENT ........................................................ 6

POINT I

    MOTION TO DISMISS STANDARD ................................ 6

POINT II

    THE APRIL 7, 2011 INITIAL COLLECTION LETTER PROPERLY
    CONTAINED THE VALIDATION NOTICE REQUIRED UNDER SECTION
    1692g(a) OF THE FDCPA ..................................... 9

POINT III

    THERE IS NOTHING IMPROPER CONCERNING THE "FILE UNDER REVIEW"
    REFERENCE IN THE LETTER ................................... 17

POINT IV

    THE APRIL 7, 2011 COLLECTION LETTER INDICATES THAT RMCB WAS A
    DEBT COLLECTOR ACTING ON BEHALF OF ITS CLIENT, PINNACLE
    CREDIT SERVICES, AND THERE IS NO REQUIREMENT THAT IT CONTAIN
    "PROOF OF ASSIGNMENT" AND SECTION 1692J(A) IS INAPPLICABLE . 20

        A. There Is No Requirement of "Proof of Assignment" ..... 20

        B. Section 1692j(a) is Inapplicable .................... 24

POINT V

    PLAINTIFF'S REQUEST FOR STATUTORY DAMAGES ON A PER VIOLATION
    BASIS IS CONTRARY TO THE FDCPA WHICH CAPS STATUTORY DAMAGES
    ON A PER CLAIMANT BASIS ................................... 28

CONCLUSION ..................................................... 30

<u>**TABLE OF AUTHORITIES**</u>

<u>**Case**</u>                                                                          <u>**Page**</u>

*Ashcroft v. Iqbal*, _ U.S.__,
    129 S. Ct. 1937, 1948-49, 173 L.Ed.2d 868 (2009).............. 8

*Baraka v. McGreevey*,
    481 F.3d 187, 211 (3d Cir. 2007)............................. 7

*Beattie v. D.M. Collections, Inc.*,
    764 F.Supp. 925, (D.Del. 1991)............................. 30

*Belile v. Allied Medical Accounts Control Assoc. Bureaus, Inc.*,
    209 B.R. 658, 663 (E.D. Pa. 1997)......................... 14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 555 (2007).................................... 7

*Campuzano-Burgos v. Midland Credit Management, Inc.*,
    550 F.3d 294, 301 (3d Cir. 2008)..................... 10, 11, 22

*Clomon v. Jackson*,
    988 F.2d 1314, 1321 (2d Cir. 1993)......................... 19

*Crenshaw v. Computex Information Services, Inc.*,
    2010 WL 2951506 (D.N.J. July 21, 2010)..................... 26

*Crenshaw v. Computex Information Services, Inc.*,
    2011 WL 1640175 at *1, FN1 (D.N.J. April 30, 2011) ......... 27

*Crossley v. Lieberman*,
    868 F.2d 566, 573 (3d Cir. 1989)........................... 29

*Ford v. Consigned Debts & Collections, Inc.*,
    2010 WL 5392643 at *5 (D.N.J. Dec. 21, 2010)............... 29

*Forman v. Academy Collection Service, Inc.*,
    388 F. Supp. 199, 205 (S.D.N.Y. 2005).................... 11, 27

*Gaetano v. Payco of Wisconsin, Inc.*,
    774 F.Supp. 1404, 1411 (D.Conn.1990)....................... 15

*Goodman v. People's Bank*,
    209 Fed. Appx. 111, 114 (3d Cir. 2006)..................... 29

*Graziano v. Harrison*,
    950 F.2d 107, 111 (3d Cir. 1991)........................... 13

*Harper v. Better Business Servs., Inc.*,
    961 F.2d 1561 (11th Cir. 1992 ........................... 29

*In re Burlington Coat Factory Sec. Lit.*,
    114 F.3d 1410, 1426 (3d Cir.1997).......................... 8

In re Warfarin Sodium Antitrust Litig.,
   214 F.3d 395, 397-98 (3d Cir. 2000)........................... 6

Kent v. Tabafunda,
   2008 U.S. Dist. LEXIS 47649, *9 (D.N.J. June 19, 2008)....... 8

Lum v. Bank of Amer.,
   361 F.3d 217, 222 n.3 (3d Cir. 2004)......................... 8

McLaughlin v. Phelan Hallinaw & Schimeg, LLP,
   2011 WL 1467228 (W.D.PA. April 17, 2011).................... 18

McStay v. I.C. Sys., Inc.,
   308 F.3d 188, 191 (2d Cir. 2002)............................ 14

Miller v. Wolpoff & Abramson, L.L.P.,
   321 F.3d 292, 310 (2d Cir. 2003)............................ 13

Oshiver v. Levin, Fishbein, Sedran & Berman,
   38 F.3d 1380, 1384-85 (3d Cir. 1994)......................... 6

Pension Benefit Guar. Corp. v. White Consol. Indus.,
   998 F.2d 1192, 1196 (3d Cir. 1993)........................... 8

Phillips v. County of Allegheny,
   515 F.3d 224, 234 (3d Cir. 2008)............................. 7

Powell v. Computer Credit, Inc.,
   975 F.Supp. 1034, 1041-43 (S.D. Ohio 1997), aff'd, 1998 WL
   773989 (6th Cir. 1998) .................................. 14, 16

Quamina v. Retrieval Masters Auditors Bureau, Inc.,
   2011 WL 1099483 (E.D.N.Y. March 22, 2011) .................. 19

Rios v. Pinnacle Financial Group, Inc.,
   2006 WL 2462899 at *3-4 (S.D.N.Y. Aug. 23, 2006)............ 14

Rosenau v. Unifund Corp.,
   539 F.3d 218, (3d Cir. 2008) ............................... 18

Sims v. GC Services L.P.,
   445 F.3d 959 (7th Cir. 2006) ............................. 13

Sorey v. Computer Credit, Inc.,
   2006 WL 1896401 (S.D.N.Y. July 7, 2006)..................... 14

Stokes v. Consumer Credit, Inc.,
   2011 WL 1099000 at *2 (D.N.J. March 22, 2011)........... 11, 15

West Penn Allegheny Health System, Inc. v. UPMC,
   627 F.3d 85, 98 (3d Cir. 2010) .............................. 8

White v. Goodman,
   200 F.3d 1016 (7th Cir. 2000) ............................ 25

Wilson v. Quadramed Corp.,
  225 F.3d 350, 354-5 (3d Cir. 2000)......................11, 16

Wright v. Fin. Serv. of Norwalk, Inc.,
  22 F.3d 647, 650-51 (6th Cir. 1994) ....................21, 29

**Statutes**

15 U.S.C. § 1692e(3) .....................................18

15 U.S.C. § 1692g(a)(1)-(5) ............................10, 12

15 U.S.C. § 1692g(a)(5) ............................12, 21, 23

15 U.S.C. § 1692j .......................................24

15 U.S.C. § 1692j(a) ................................24, 25

15 U.S.C. §1692 et seq...............................1, 6

15 U.S.C. §1692(k)(a)(2)(A) .............................29

28 U.S.C. § 1331 .........................................6

28 U.S.C. § 1446 .........................................6

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................6
Fed. R. Civ. P. 12(f) ...................................9

## PRELIMINARY STATEMENT

This action concerns an alleged initial collection letter that plaintiff, Victor Ruiz, ("plaintiff" or "Ruiz") received from the defendant, Retrieval-Masters Creditors Bureau, Inc. ("RMCB"), on or about April 7, 2011. Ruiz asserts that the letter violates the Fair Debt Collections Practices Act, ("FDCPA"), 15 U.S.C. §1692 et seq. Ruiz's Complaint, like some several other complaints recently filed by his counsel on behalf of other clients, is long on conclusions and short on facts.

Ruiz pleads that the validation notice informing him that he has the right to dispute the debt within thirty days of receipt of the letter is "illegally placed on the back of the collection letter." However, a debt collector does not violate the FDCPA if the validation notice is on the reverse side of the letter, so long as there is a sufficient reference to it – which there is in this case - to alert the consumer to the notice.

Ruiz's Complaint further alleges that the April 7, 2011 letter "does not state that the consumer has the right [to] dispute the debt, instead it just instructs the debtor to call the office immediately, implicating that this is their only option available to them." Yet, this allegation is contradicted by the letter itself which does not even use the word "immediate" or any other similar words, does not direct the

consumer to "call the office immediately" or even call RMCB. The allegation simply is not supported by the letter.

The inclusion on the front of the letter, "File Under Review," does not imply or threaten any legal or "attorney action" as alleged in the Complaint.  In fact, the letter makes no mention of any legal action, legal department, attorney names or references of any kind.  It is completely devoid of any words implying or threating any legal or attorney action.

Ruiz next alleges that the letter is somehow in violation of the FDCPA because the "the alleged debt is owed to Verizon and bought by Pinnacle Credit Services.  The plaintiff does not consent to or ratify to any of these assignment of the alleged debt."  However, these allegations do not form any viable cause of action under the FDCPA as plaintiff's consent or ratification is not required, there is nothing deceptive or misleading about them in the letter which expressly informed Ruiz that the Verizon Wireless debt had been purchased by Pinnacle Credit Services and that RMCB, a debt collector, had been retained by Pinnacle to collect the debt.  He admits as such in his Complaint.

As such, Plaintiff's citation to Section 1692j of the FDCPA, which prohibits "flat-rating," is inapplicable.

Additionally, Ruiz requests damages that as a matter of law cannot be sustained by requesting statutory damages on a "per

violation" basis when the FDCPA limits any statutory damages to no more than $1,000 per plaintiff, in a non-class action or individual case.

For the reasons that follow, Ruiz's complaint fails to state a cause of action upon which relief can be granted and should be dismissed with prejudice in its entirety as any attempt at amendment would be futile.

<u>**STATEMENT OF FACTS**</u>

On or about April 7, 2011, plaintiff alleges that he received an initial collection letter (hereinafter "April 7, 2011") from RMCB, a debt collector, relating to a debt owed to its client, Pinnacle Credit Services, which had purchased the debt from Verizon Wireless. Declaration of Jeffrey S. Wollman ("Wollman Decl."), at ¶ 3.

Plaintiff's Complaint centers solely around the one April 7, 2011 collection letter that he received from RMCB. <u>See</u> Wollman Decl., at Exh. A (Complaint/Memorandum of Law, hereinafter simply "Complaint"). However, Ruiz's Complaint does not attach the April 7, 2011 letter, nor quote from it, so RMCB has provided an exemplar copy of the same letter provided to Ruiz, which in pertinent part, after the addressee's name and address, provides, "File Under Review" in a text box at the top, followed by:

RE:  Your Wireless Number **[phone number inserted]**

3

Dear **[name inserted]**:

We are sending you this letter to inform you that your Verizon Wireless account has been purchased by our client, Pinnacle Credit Services.

Due to non-payment, this has become a serious matter and we have been authorized to contact you by our client. Your account is extremely past due and has been reported to a national credit bureau by our client. This action could impede your ability to obtain credit. Your payment in full in the amount of **[amount due inserted]** or your response is necessary to resolve this outstanding debt and to prevent future collection efforts.

Please send your check or money order to us in the enclosed envelope made payable to Retrieval Masters Creditors Bureau. Your new account identifier is **[account number inserted]** and should be written on your check or money order.

See the reverse side of this letter for important information about your rights.

Wollman Decl., at Exh. B.[1]

The last sentence, prior to a remittance stub,[2] i.e., "See the reverse side of this letter for important information about your rights" - is in the middle of page, separated by blank lines both above and below it such that it is not obscured in

---

[1] We have not included the debtor specific information since it is the form itself that plaintiff complains about in this case.

[2] The bottom half of letter is remittance stub addressed to RMCB, with its address on one side, along with the debtor's name and address on the other side. Above the debtor's name and address are four separate lines for individualized information for: "You Owe: PINNACLE CREDIT SERVICES; Amount Due: [amount inserted]; Charge Date: [date inserted]; and Account Number: [number inserted]." Wollman Decl., at Exh. B.

4

any way. As the last, stand-alone sentence/paragraph in the text of the letter on the first page it clearly directs the reader to, "See the reverse side of this letter for important information about your rights." Id.

On the reverse side of the letter, the following notices appear, in larger font than the text on the front side, and in pertinent part, as follows:

> The disclosures below are required by state or federal law. This is not intended to be a complete statement of all rights consumers may have under state and federal law.
>
> "This is an attempt to collect a debt. Any information obtained will be used for that purpose." This communication is from a debt collector.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice, that the debt or any portion thereof is disputed, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.
>                . . . .

Wollam Decl., Exh. B.

On or about May 4, 2011, Ruiz filed this lawsuit in the Superior Court of New Jersey, Bergen County, Special Civil Part, within a month after receipt of the April 7, 2011 letter complaining about its content. Wollman Decl., at Exh. A.

On or about May 17, 2011, RMCB was served with the Summons, Complaint/Memorandum of Law.   Thereafter, on or about June 1, 2011, RMCB removed the action to this Court, pursuant to 28 U.S.C. § 1446, since the lawsuit alleged a claim under a federal statute, the FDCPA, 15 U.S.C. 1692 et seq., for which this Court has original jurisdiction.[3] See 28 U.S.C. § 1331; Dkt. Entry No. 1 [removal notice].

For the reasons that follow, Ruiz's Complaint fails to state a cause and should be dismissed, with prejudice.

## ARGUMENT

### Point I

### MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a party to move to dismiss a claim for "failure to state a claim upon which relief can be granted."   A complaint should be dismissed where plaintiff's allegations, taken as true, fail to state a claim.   In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397-98 (3d Cir. 2000).   Under Rule 12(b)(6), the court must accept as true all allegations in the complaint and view all reasonable inferences in the light most favorable to the non-moving party.   Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994).   Although a court must view

---

[3] Ruiz's Complaint does not allege any state causes of action and is premised solely on alleged violations of the FDCPA.

6

the factual allegations of a complaint as true in a motion to dismiss, it is not compelled to accept "unsupported conclusions and unwarranted inferences" or "a legal conclusion couched as a factual allegation." Baraka v. McGreevey, 481 F.3d 187, 211 (3d Cir. 2007) (internal citations omitted).

"While a Complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). A plaintiff's factual allegations are evaluated for sufficiency under a plausibility standard, which "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" that the plaintiff is entitled to relief. Id. at 556. See also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (making clear that the Twombly standard is generally applicable). Moreover, a plaintiff establishes his entitlement to relief, and survives a motion to dismiss, by advancing "some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-235.

Therefore, a court faced with a motion to dismiss "can choose to begin by identifying pleadings that, because they are

no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, _ U.S.__, 129 S. Ct. 1937, 1948-49, 173 L.Ed.2d 868 (2009)(affirming that Twombly standards apply to all motions to dismiss).  Moreover, "judging the sufficiency of a pleading is a context-dependent exercise" as "[s]ome claims require more factual explication than others to state a plausible claim for relief." West Penn Allegheny Health System, Inc. v. UPMC, 627 F.3d 85, 98 (3d Cir. 2010).

In addition, the court can consider documents that plaintiff failed to attach to his complaint as well as matters of public record, without converting it to a summary judgment motion.  See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document); Lum v. Bank of Amer., 361 F.3d 217, 222 n.3 (3d Cir. 2004)(court may consider documents that form the basis of plaintiff's claim); Kent v. Tabafunda, 2008 U.S. Dist. LEXIS 47649, *9 (D.N.J. June 19, 2008)(same); see also In re Burlington Coat Factory Sec. Lit., 114 F.3d 1410, 1426 (3d Cir.1997)(court may take judicial notice of matters of public record that a defendant attaches to a motion to dismiss without converting it into a summary judgment motion).

8

Accordingly, this Court is permitted to take judicial notice of and consider the documents attached to the accompanying Declaration, specifically, an exemplar of the April 7, 2011 initial collection letter referenced in the Complaint but not attached to it.  See Wollman Decl., ¶¶ 3-4, Exhs. B.

<u>POINT II</u>

**THE APRIL 7, 2011 INITIAL COLLECTION LETTER PROPERLY CONTAINED THE VALIDATION NOTICE REQUIRED UNDER SECTION 1692g(a) OF THE FDCPA**

Ruiz's complaint is difficult to decipher since it contains little facts, fails to attach or even quote from the one letter that he complains about, does not contain separate counts and is, in places, in narrative form.  See Wollman Decl., at Exh. A.[4] However, even taking into consideration the improper sections contained in the Memorandum of Law that plaintiff combined into his Complaint, it fails to allege any FDCPA violations. Plaintiff cites to the "validation of debts" Section 1692g(a) of

---

[4] Ruiz's formulistic Complaint, similar to others recently filed by his counsel, was originally filed in New Jersey state court, contains both numbered paragraphs, as required by New Jersey Rule of Court R. 1:4-2, but also improperly attempts to mesh together a Memorandum of Law with the Complaint and contains narrative, unnumbered paragraphs.  It does not have separate counts.  RMCB has not included a motion under Fed. R. Civ. P. 12(f) to strike the improper pleading, but instead has concentrated on the lack of substantive merit.  RMCB reserves all of its rights to strike any improper pleading that plaintiff may attempt to file.

the FDCPA, which applies only to initial written communications,

and provides as follows:

> **(a) Notice of debt; contents**
> Within five days after the initial communication
> with a consumer in connection with the collection of
> any debt, a debt collector shall, unless the following
> information is contained in the initial communication
> or the consumer has paid the debt, send the consumer a
> written notice containing –
>      (1) the amount of the debt;
>      (2) the name of the creditor to whom the debt is
> owed;
>      (3) a statement that unless the consumer, within
> thirty days after receipt of the notice, disputes the
> validity of the debt, or any portion thereof, the debt
> will be assumed to be valid by the debt collector;
>      (4) a statement that if the consumer notifies the
> debt collector in writing within the thirty-day period
> that the debt, or any portion thereof, is disputed,
> the debt collector will obtain verification of the
> debt or a copy of a judgment against the consumer and
> a copy of such verification or judgment will be mailed
> to the consumer by the debt collector; and
>      (5) a statement that, upon the consumer's written
> request within the thirty-day period, the debt
> collector will provide the consumer with the name and
> address of the original creditor, if different from
> the current creditor.

15 U.S.C. § 1692g(a)(1)-(5).

The "least sophisticated" debtor standard has been applied

in this Circuit with respect to various FDCPA claims. <u>See</u>

<u>Campuzano-Burgos v. Midland Credit Management, Inc.</u>, 550 F.3d

294, 301 (3d Cir. 2008).

Although the "least sophisticated" debtor standard protects

naive consumers, it also "prevents liability for bizarre or

idiosyncratic interpretation of collection notices by preserving

10

a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." <u>Wilson v. Quadramed Corp.</u>, 225 F.3d 350, 354-5 (3d Cir. 2000). The least sophisticated consumer standard "<u>does not go so far as to provide solace to the willfully blind or non-observant. Even the least sophisticated debtor is bound to read collection notices in their entirety</u>." <u>Campuzano-Burgos</u>, 550 F.3d at 299 (emphasis added).

Moreover, a debtor collector is not required to parrot the words of the statute verbatim to meet the requirements of the FDCPA, "as long as the warning c[ame] across." <u>See, e.g.</u>, <u>Forman v. Academy Collection Service, Inc.</u>, 388 F. Supp. 199, 205 (S.D.N.Y. 2005)(failure to track language of statute does not violate FDCPA); <u>Stokes v. Consumer Credit, Inc.</u>, 2011 WL 1099000 at *2 (D.N.J. March 22, 2011)(no violation since defendant's obligation was "not to write the perfect letter, but to comply with the requirements of the FDCPA" that effectively inform the consumer of his rights).

Here, Ruiz alleges that "not contained anywhere on the letter is the required wording that a consumer has the right to dispute the debt within thirty days of receipt of the letter. Instead, this notice is illegally placed on the back of the collection letter." <u>See</u> Wollman Decl., at Exh. A (Complaint), ¶13. In the "Claims for Relief" section of his Complaint, Ruiz's

first narrative paragraph cites to <u>all</u> subparts of 15 U.S.C. § 1692g(a)(1)-(5) and concludes, in the next paragraph, that: "The Defendant never included this required language." Wollman Decl., Exh. A at p. 4-5. Although it is unclear if the sentence refers to the requirements of Section 1692g(a)(4)-(5) or the entirety of Section 1692g(a)(1)-(5), RMCB provided <u>all</u> of the required notices to Ruiz in the April 7, 2011 letter.

In compliance with Sections 1692g(a)(1) and (2), RMCB provided the required information concerning the "amount of the debt" and "name of the creditor to whom the debt is owed" on the front of the letter, both in the body of the letter itself and in the remittance stub portion of the letter. <u>See</u> Wollman Decl., at Exh. B.

Ruiz was advised on the front of the letter to "See the reverse side of this letter for important information about your rights," and the reserve side contains the required notifications as illustrated below:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. **[complies with § 1692g(a)(3)]** If you notify this office in writing within 30 days after receiving this notice, that the debt or any portion thereof is disputed, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. **[complies with § 1692g(a)(4)]** If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if

different from the current creditor.  **[complies with §
1692g(a)(5)]**

Wollam Decl., Exh. B.

Ruiz's conclusion that FDCPA notifications on the reserve
side of a letter are "illegal" is wrong.  See <u>Miller v. Wolpoff
& Abramson, L.L.P.</u>, 321 F.3d 292, 310 (2d Cir. 2003), <u>cert</u>.
<u>denied</u>, 540 U.S. 823, 124 S. Ct. 153, 157 L. Ed. 2d 44 (2003).
There is <u>no</u> requirement that the validation notice must appear
on the front of the letter.  Instead, "the notice must be in
print sufficiently large to be read, and must be sufficiently
prominent to be noticed." <u>Graziano v. Harrison</u>, 950 F.2d 107,
111 (3d Cir. 1991).[5]

Courts have upheld letters that contained validation
notices on the reverse side of the letter where the reader was
directed to see the reverse side:

- <u>Sims v. GC Services L.P.</u>, 445 F.3d 959 (7th Cir. 2006)(<u>no</u>
  violation for validation notices on reverse side of
  letter in gray ink against white background where reader
  was directed to see reverse side);

- <u>Miller v. Wolpoff & Abramson</u>, 321 F.3d at 310 (<u>no</u>
  violation where letter directed reader to reverse side,

---

[5] The <u>Graziano</u> Court found that the letter violated Section
1692g(a) since the 30 day period in the validation notice on the
back of the letter was contradicted, or overshadowed, by the
threat of legal action appearing on the front of the letter to
pay within 10 days.  Here, in this instance, there is no demand
for "immediate" payment or any threat of legal action.  Despite
Ruiz's attempt to align his case with <u>Graziano</u>, there simply is
<u>no</u> request for "immediate" payment or any mention of any legal
threat or legal action. Those words simply do <u>not</u> appear in this
letter. See Wollman Decl., at Exh. B.

13

including by stating, "*[a]fter* reading the important notice on the reverse" to "call our office to resolve this matter" "*if appropriate*");

- McStay v. I.C. Sys., Inc., 308 F.3d 188, 191 (2d Cir. 2002) (<u>no</u> Section 1692g(a) violation since any ambiguity on front of letter as to when the 30 days began to run was cleared up by the validation notice appearing on the reverse side of the letter and "<u>[w]hen a prominent instruction in the body of the letter warns that there is important information on the reverse side, a reasonable reader, even if unsophisticated, would turn the paper over and read the back</u>." (emphasis added));

- Rios v. Pinnacle Financial Group, Inc., 2006 WL 2462899 at *3-4 (S.D.N.Y. Aug. 23, 2006)(<u>no</u> violation since front of letter directed consumer to read the reverse side for "important consumer information");

- Sorey v. Computer Credit, Inc., 2006 WL 1896401 at *4 (S.D.N.Y. July 7, 2006)(finding <u>no</u> violation for validation notice on reverse side and holding, "[w]hether the existing state of the art and science would have permitted a reasonable debt collector to print and transmit a notice that would have been more easily read than the one actually used is not dispositive. The motivation of the debt collector and its printer in making artistic, creative, graphic and economic choices can neither save a notice that violates the statute nor condemn one that complies with the statute");

- Belile v. Allied Medical Accounts Control Assoc. Bureaus, Inc., 209 B.R. 658, 663 (E.D. Pa. 1997)(finding other problems with the subject letter since it threatened legal action that could not be taken, but found <u>no</u> Section 1692g violation, since "[w]e are not prepared to say that the appearance of the validation notice on the reverse side of a letter, with an adequately-sized reference to the notice on the front side, violates § 1692g.");

- Powell v. Computer Credit, Inc., 975 F.Supp. 1034, 1041-43 (S.D. Ohio 1997), <u>aff'd</u>, 1998 WL 773989 (6th Cir. 1998) (language of letter that stated that creditor "insists on

immediate payment or a valid reason for failure to make payment" did <u>not</u> negate or overshadow statutory notices appearing on reverse side of letter); and

- <u>Gaetano v. Payco of Wisconsin, Inc.</u>, 774 F.Supp. 1404, 1411 (D.Conn.1990) (approving collection notice even though required disclosures were printed only on the back of the letter, since language on the front directed debtor to read the reverse).

In <u>Stokes v. Consumer Credit, Inc.</u>, <u>supra</u>, the Court found no FDCPA violation where the collection letter had the validation notice on the front of the letter and on the back of the letter, but the front validation notice failed to include that the consumer could dispute "any portion" of the debt, whereas the validation notice on the back of the letter did contain the necessary language that the consumer could dispute any part of the debt. 2011 WL 1099000 at *1-2. In finding no violation, <u>Stokes</u> found that "even the least sophisticated consumer is charged with reading the front and the back of the letter, and that the letter even instructed Plaintiff to do so." <u>Id</u>. at 2.

Here, Ruiz was expressly directed to read the reverse side of the letter in the last sentence, prior to a remittance stub, by the following: "See the reverse side of this letter for important information about your rights."   Wollman Decl., at Exh. B. The sentence is in the middle of page, separated by blank lines both above and below it.  It is in the same font and size as the body of the letter.   As the last, stand-alone

15

sentence/paragraph in the text of the letter on the first page, it is "sufficiently prominent" to be noticed and clearly directs the reader to see the reverse side "for important information about your rights." Id.

Plaintiff further alleges that the April 7, 2011 collection letter "does not state that the consumer has the right [to] dispute the debt, instead it just instructs the debt to call the office immediately, implicating that this is their only option available to them." Wollman Decl., at Exh. A (Complaint) at ¶13. However, the April 7, 2011, letter has no such language and the validation notice was provided.  The letter does not ask for any calls or to "call the office immediately." Id. Nothing of the sort is even mentioned.

Indeed, even if there was such a statement, which there was not, it would not overshadow the validation notice and not violate the FDCPA.  For instance, in Wilson v. Quadramed, the Third Circuit found that the collection letter that notified the plaintiff that the account had been placed for "immediate collection" and that he could pay the bill "immediately and avoid further action" did not confuse or mislead "the least sophisticated debtor" as to his statutory rights. 225 F.3d at 356. See also, Powell v. Computer Credit, supra.

Accordingly, plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

16

statements" that RMCB did not comply with the validation notice required under Section 1692g(a)(1)-(5) or that it was "illegally" placed on the reverse side of the letter must fail. See, Iqbal, 129 S.Ct. at 1949.   There is no requirement that the validation notice must appear on the front of the letter, only that it be sufficiently prominent to be noticed which it was in this instance by the reference on the front and its inclusion, in large print, on the reverse side of the letter.

### Point III

**THERE IS NOTHING IMPROPER CONCERNING THE "FILE UNDER REVIEW" REFERENCE IN THE LETTER**

Ruiz next complains that the "File Under Review" comment on the front of the letter is "a typical scare tactic used to confuse the consumer into believing that the creditor may take attorney action." Wollman Decl., Exh. A at pp.5-6.   However, there is nothing in the letter that states that any attorney is involved or will be involved and no mention of any legal department.   It is not sent by any attorney or law firm and makes absolutely no mention of, or any threat of, any attorney involvement or legal action.

Plaintiff has not cited to any particular section of the FDCPA with respect to this allegation, but presumably, he is referring to Section 1692e(3), which prohibits "the false representation or implication that any individual is an attorney

17

or that any communication is from an attorney." 15 U.S.C. § 1692e(3).

In cases dealing with Section 1692e(3), the court is confronted with allegations of attorneys, law firms or legal departments sending collection letters that attorneys have not actually reviewed as there is nothing inherently wrong with an attorney, law firm or legal department sending a collection letter, rather it is problem when no attorney or legal professional actually reviewed the file. See Rosenau v. Unifund Corp., 539 F.3d 218, (3d Cir. 2008)(collection letter from Unifund's "Legal Department," that employed no attorneys, could at the pleading stage qualify as potentially deceptive and the Third Circuit remanded the case back to the district court since Unifund's Legal Department, staffed by non-lawyers who coordinated the activities of contract attorneys, was not fictitious and the title was not necessarily inadequate).

In McLaughlin v. Phelan Hallinaw & Schimeg, LLP, 2011 WL 1467228 (W.D.PA. April 17, 2011), the court was confronted with an initial validation notice sent from and signed by a law firm yet plaintiff pled no facts upon which a valid FDCPA claim could be made since he failed to allege that an attorney was not actually involved in reviewing the letter.

In granting defendant's dismissal motion, the McLaughlin Court noted that: "[w]hile the Court of Appeals for the Third

Circuit has not yet evaluated which types of collection letters convey an impression of attorney review, other circuits have found that 'the combined effect of the signature and letterhead implies that an attorney has reached a professional judgment that the debt is legally effective.'" 2011 WL 1467228 at *4, citing, Clomon v. Jackson, 988 F.2d 1314, 1321 (2d Cir. 1993). The court rejected the argument that no attorney review took place simply because plaintiff alleged that the debt was invalid, especially since the letter itself contains some legal information. Id. at *4-5.

Here, there is no mention of any attorney, law firm or legal department in the April 7, 2011 letter such that there is no section 1692(e)(3) violation.

To the extent that the plaintiff may be making a claim under Section 1692e(5) ("threatening to take any action that cannot legally be taken") or Section 1692e(10) (prohibits "any false representation or deceptive means to collect or attempt to collect a debt"), Ruiz's allegations still fail.

In Quamina v. Retrieval Masters Auditors Bureau, Inc., 2011 WL 1099483 (E.D.N.Y. March 22, 2011), the court rejected Section 1692e(5) and 1692e(10) claims premised on a collection letter that stated, "be advised that our client has authorized us to continue our collection efforts until you have honored this outstanding obligation...To avoid further contact, send your

19

payment immediately." Id. at *1. The Court found no threat of legal action that could not be taken and discarded the argument that the letter "misleads the consumer by implying that plaintiff...will not have the opportunity to defend herself" as a "bizarre and idiosyncratic" interpretation since the letter made no such threat. Id. At *3.

In this case, there is no mention of or implication of any attorney, law firm or legal department in the April 7, 2011 letter. It was sent by RMCB and there is no threat or implication of any legal action or attorney involvement. See Wollman Decl., Exh. B. Thus, plaintiff's conclusion that the phrase "File Under Review" implies a threat of attorney action, when the letter says nothing of the sort, is, at best, a "bizarre or idiosyncratic interpretation" for which there is no liability.

**POINT IV**

**THE APRIL 7, 2011 COLLECTION LETTER INDICATES THAT RMCB WAS A DEBT COLLECTOR ACTING ON BEHALF OF ITS CLIENT, PINNACLE CREDIT SERVICES, AND THERE IS NO REQUIREMENT THAT IT CONTAIN "PROOF OF ASSIGNMENT" AND SECTION 1692J(A) IS INAPPLICABLE**

**A.  There Is No Requirement of "Proof of Assignment"**

Ruiz's Complaint further alleges that the April 7, 2011 letter "does not explain how the defendant acquired this debt, or if they own it at all. If the debt is not owned, then the letter contained no proof or claim of assignment by the original

20

creditor." Wollman Decl., at Exh. A (Complaint), at p. 5. However, there is nothing in the FDCPA that requires that any collection letter "explain how the defendant acquired this debt, or if they own it at all" or that it contain any "proof of assignment." Plaintiff's Complaint does not cite to any section of the FDCPA or case law to support his conclusions.

The April 7, 2011 letter expressly informs Ruiz who owns the debt and from where it originated in the opening sentence of the letter: "We are sending you this letter to inform you that your Verizon Wireless account has been purchased by our client, PINNACLE CREDIT SERVICES." Wollman Decl., at Exh. B. The letter further provides the same name, Pinnacle Credit Services, in the "You Owe:" reference line in the remittance portion of the letter.

Congress, in enacting the FDCPA, provided that a debt collector had to - if requested in writing - supply a consumer with only the name and address of the original creditor, if different from the current creditor. See 15 U.S.C. § 1692g(a)(5). The statute does not require, as alleged by plaintiff, "any explanation" as to how a debt was acquired or "proof of assignment." Had Congress intended such a requirement, it would have included it. See, e.g., Wright v. Fin. Serv. of Norwalk, Inc., 22 F.3d 647, 650-51 (6th Cir.

1994)(rejecting statutory damages on a "per violation" basis and holding, "Congress certainly knows how to write statutes….)

Moreover, there is nothing "misleading, deceptive and illegal" about the letter as argued by Ruiz[6] since even the "least sophisticated" debtor would see that RMCB's client was "Pinnacle Credit Services" and that Pinnacle Credit Services had purchased Ruiz's past-due Verizon Wireless account as indicated in the body of, and in the "You Owe" line of, the April 7, 2011 letter.   See, e.g., Campuzano-Burgos, 550 F.3d at 301 (settlement letters could not, even by the least sophisticated debtor standard, be interpreted as coming from anyone other than Midland Credit, the corporation, as opposed to a personal communication).

In short, there is no statutory requirement, even if requested, of anything other than the name and address of the original creditor if different from the current creditor.   The information as to the name and address of the original creditor, is not required to be even contained in the initial collection

---

[6] The Complaint alleges that the letter is "misleading, deceptive and illegal" yet the Complaint acknowledges that the "alleged debt is owed to Verizon and bought by Pinnacle Credit Services. The plaintiff does not consent to or ratify to any of these assignment of the alleged debt." See Wollman Decl., at Exh. A, ¶¶10-11.   Plaintiff fails to explain how the letter is misleading or how the FDCPA was allegedly violated.   This initial collection letter by Ruiz's own admission informed him that his debt had been purchased and by whom.   There is nothing misleading about it and no requirement that he consent to or ratify the purchase.

letter as the statute contemplates a provision for such information, if requested, at a later date. See 15 U.S.C. § 1692g(a)(5).

Here, although this initial collection letter was not required to provide the name of the original creditor, it did so, by stating that Pinnacle Credit Services had purchased Ruiz's past-due Verizon Wireless account and even provided the wireless phone number in the reference line, "Re: Your Wireless Number…". See Wollman Decl., Exh. B.  RMCB, as a debt collector, was acting on behalf of it client, Pinnacle Credit Services, to collect the debt as stated in the April 7, 2011 letter. Plaintiff was fully aware of the same based on the content of the April 7, 2011 letter and even admitted as such in his Complaint:  "The said debt was originally property [of] Verizon Wireless, but was based upon information and belief, has been assigned or sold to Pinnacle Credit Services who has hired Retrieval Masters Credit Bureau, Inc. for collection."  Wollman Decl., Exh. A, at ¶8.

As such, RMCB has complied with the FDCPA and there is no violation for failing to include "any proof of assignment" or "explanation" as to how the debt was purchased.

**B.   Section 1692j(a) is Inapplicable**

Ruiz further alleges that the April 7, 2011 letter violated 15 U.S.C. § 1692j(a)[7] because "this initial contact letter was written to completely deceive the consumer as to who owned this debt as this time, and as to [the] ability to dispute the debt." Wollman Decl., Exh. A, (complaint), p. 5.   As previously indicated, the April 7, 2011 letter contained all of the required information under Section 1692g(a) and advised Ruiz that the Verizon Wireless debt had been purchased by the creditor, Pinnacle Credit Services, RMCB's client.   Wollman Decl., Exh. B.   Moreover, the April 7, 2011 letter does <u>not</u> violate Section 1692j(a), which provides:

> **§ 1692j. Furnishing certain deceptive forms**
>     (a) It is unlawful to design, compile, and furnish any form knowingly that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.
>
>     (b) Any person who violates this section shall be liable to the same extent and in the same manner as a debt collector is liable under section 1692k of this title for failure to comply with a provision of this subchapter.

15 U.S.C. § 1692j.

---

[7] Plaintiff's complaint cites to § 812(a) which is contained in 15 U.S.C. § 1692j(a).

In White v. Goodman, 200 F.3d 1016 (7th Cir. 2000), the
Seventh Circuit explained that Section 1692j(a) was not aimed at
debt collectors that actually attempt to collect debts, but to
third parties that may furnish forms or allow use of their names
to creditors:

> One of the practices that the Fair Debt Collection
> Practices Act… forbids is "flat-rating," the term
> popularly applied to providing a form which creates
> the false impression that someone (usually a
> collection agency) besides the actual creditor is
> "participating" in collecting the debt. 15 U.S.C. §
> 1692j(a); see S.Rep.No. 95-382, 95th Cong. 1st Sess. 5
> (1977), U.S. Code Cong. & Admin. News 1977 pp.1695,
> 1699. (The provider of the form presumably charges a
> "flat rate" for the form; hence the popular name for
> the practice.)….
>
> The flat-rater is thus not the creditor, but the
> counterpart of a contributory infringer in the law of
> intellectual property; he furnishes a deceptive
> instrumentality to the primary violator.    Another
> provision of the Act, 15 U.S.C. § 1692a(6), brings the
> latter within the scope of liability by forbidding the
> creditor, in the collection of his debts, to use a
> name which suggests the involvement of a third party,
> unless the third party is participating in the debt
> collection, for then there is no deception.

Id. at 1018.

In rejecting plaintiff's arguments that one of the
defendants, North Shore, was a flat-rater because it composed
the dunning letter sent to the plaintiff, the court in White v.
Goodman found that since the debts to the creditor (Book-of-the-
Month Club) were small, that North Shore's collection efforts
were usually limited to just sending those letters and there was

25

little likelihood of any collection suits being filed. Id. at
1019. Nonetheless, North Shore was a "bona fide collection
agency" and no assignment of the debt was necessary:

> [t]he plaintiffs seem to think that unless the
> creditor assigns the debt at the start to a collection
> agency, the agency is a flat-rater. But there is
> nothing in the statute to equate participation in
> collection with ownership of the debt.

Id., 200 F.3d at 1019-20.

In Crenshaw v. Computex Information Services, Inc., 2010 WL
2951506 (D.N.J. July 21, 2010), the plaintiff's complaint was
dismissed pursuant to Rule 12(b)(6) against the one of three
defendants, Evergreen, the creditor/landlord, for failure to
state a cause of action, including one under Section 1692j(a).
The complaint contained no information about the relationship
between Evergreen and the two co-defendants that would allow the
Court to find that Evergreen was collecting its own debts or
that one of the two co-defendants was not actually involved in
debt collection. Id. at *7. "Rather, the Complaint simply
asserted in a conclusory manner that at least one of the
defendants had a role in collecting the debt which deviated from
what was stated in the … letter and that violated the FDCPA."
Id. The Court found that this contention was not a factual
allegation, but rather a conclusion of law, which did not need
to be credited under Iqbal and, accordingly, the claims against
Evergreen were dismissed. Id. at *7-8.

The Crenshaw case proceeded against the two remaining defendants, a law firm and a collection agency, and the Court recently granted summary judgment to both remaining defendants on all remaining counts, and against plaintiff. See Crenshaw v. Computex Information Services, Inc., 2011 WL 1640175 at *1, FN1 (D.N.J. April 30, 2011) ("Crenshaw II"). In rejecting Count I of the complaint under Section 1692j(a) against the law firm ("LEP") that filed eviction proceedings against the plaintiff, the Crenshaw II Court found that a law firm that regularly collects consumer debts can be considered a "debt collector" under the FDCPA, and that since LEP was involved in collecting the debt by filing the eviction, there was nothing misleading about including LEP in the collection letter. Id. at *4-5.

Similarly, in Forman v. Academy Collection Service, Inc., supra, the court found no violation of Section 1692j(a) since "there was no indication in the Complaint or any documents filed by the parties that Defendant sold a set of letters to Citibank or that Defendant sold the use of its letterhead to Citibank." 388 F.Supp.2d at 205. There was no evidence that the letters were designed to deceive plaintiffs into thinking that a third party was involved in the collection of the plaintiffs' debts who was not so involved and the letters made it clear that the defendant was "acting on behalf of Citibank." Id.

27

In this case, Ruiz's Complaint contains conclusions with no factual allegations to support a Section 1692j(a) claim. See Wollman Decl., at Exh. A (Complaint). The Complaint attacks the April 7, 2011 letter, but does not bother to attach it. However, the April 7, 2011 letter plainly shows the name of the current creditor, Pinnacle, in two places and explains that Pinnacle had purchased Ruiz's past-due Verizon Wireless debt. Wollman Decl., Exh. B.

Given all of the above, even the least sophisticated debtor would understand that RMCB was actually attempting to collect the debt now owed to Pinnacle, having purchased it from Verizon Wireless, such that there is nothing misleading about the letter and no basis for any Section 1692j(a) claim.

## Point V

### PLAINTIFF'S REQUEST FOR STATUTORY DAMAGES ON A PER VIOLATION BASIS IS CONTRARY TO THE FDCPA WHICH CAPS STATUTORY DAMAGES ON A PER CLAIMANT BASIS

As previously stated, there is no liability here under the FDCPA and Ruiz's Complaint should be dismissed in its entirety. Aside from the failure to state a cause of action under the FDCPA on the issue of liability, Ruiz's Complaint is further defective in that it requests damages that he cannot obtain as a matter of law. Plaintiff's complaint requests actual damages as well as "Statutory Damages pursuant to 15 U.S.C. § 1692(k) up to $1000 per violation." Wollman Decl., Exh. A, at p. 6. However,

28

the FDCPA limits statutory damages to no more than $1,000 in a
non-class case:

> **(a) Amount of damages**
>    Except as otherwise provided by this section,
> any debt collector who fails to comply with any
> provision of this subchapter with respect to any
> person is liable to such person in an amount equal
> to the sum of –
>    ….
>    **(2)(A)** in the case of any action by an individual,
> such additional damages as the court may allow, but
> not exceeding $1,000;…

15 U.S.C. §1692(k)(a)(2)(A).

Courts, including the Third Circuit, have <u>rejected</u> the
argument that statutory damages may be on a "per violation"
basis. <u>See</u> <u>Goodman v. People's Bank</u>, 209 Fed. Appx. 111, 114 (3d
Cir. 2006) ("We agree … that 15 U.S.C. § 1692(k)(a)(2)(A) is
best read as limiting statutory damages to $1,000 per successful
court action."); <u>Crossley v. Lieberman</u>, 868 F.2d 566, 573 (3d
Cir. 1989)(district court did not abuse its discretion in
awarding "the statutory maximum of $1,000 in additional damages
under § 1692(k)(a)(2)(A)"); <u>Wright</u>, 22 F.3d at 650-51(FDCPA
limits plaintiff's additional damages to $1,000 "per proceeding"
rather than "per violation"); <u>Harper v. Better Business Servs.,
Inc.</u>, 961 F.2d 1561 (11th Cir. 1992); and <u>Ford v. Consigned Debts
& Collections, Inc.</u>, 2010 WL 5392643 at *5 (D.N.J. Dec. 21,
2010)("A debt collector who violates the FDCPA is liable for
actual damages sustained, as well as additional damages (called

29

'statutory damages') as the court may allow, but not exceeding $1,000."); <u>Beattie v. D.M. Collections, Inc.</u>, 764 F. Supp. 925, (D.Del. 1991)(plaintiffs were entitled to a single award of statutory damages per person, rather than on a per violation basis).

As such, Ruiz's request for statutory damages on a "per violation" basis should be stricken, with prejudice, for failure to state a cause of action for which relief can be granted.

### CONCLUSION

Accordingly, defendant, Retrieval-Masters Creditors Bureau, Inc., requests that the plaintiff's Complaint be dismissed in its entirety, with prejudice, and grant the defendant costs.

Dated:   June 22, 2011
         Short Hills, New Jersey

Respectfully submitted,

_____
Virginia A. Pallotto
BUDD LARNER, P.C.
Attorneys for Defendant
   RETRIEVAL-MASTERS CREDITORS
   BUREAU, INC.

859225.W

30